IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SHAQUILLE E. WRIGHT,

            Plaintiff,

v.

CHRISOPHER SHERROD,
AUSTIN,
ASHLEY,
SUSAN,
MELVIN, and
DARREN D. GALLOWAY,

            Defendants.

Case No. 25-cv-01249-MAB

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Shaquille Wright, an inmate of the Illinois Department of Corrections (IDOC) who is currently incarcerated at Danville Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred while he was housed at Shawnee Correctional Center. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

---

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Illinois Department of Corrections, Wexford, and this Court.

## THE COMPLAINT

Plaintiff alleges the following: While he was housed at Shawnee Correctional Center, Sergeant Sherrod threw Plaintiff from his wheelchair following medical clearance. (Doc. 1, p. 2). Sherrod falsely claimed that Plaintiff had refused housing, and Plaintiff was issued a disciplinary report for disobeying a direct order. (*Id.*). Nurses Ashley and Susan were present when Sherrod used excessive force against Plaintiff and knew that Plaintiff had an ankle injury, but they did not intervene or provide medical attention. (*Id.*).

On August 4, 2023, Plaintiff appeared before the Adjustment Committee on the disciplinary ticket. (Doc. 1, p. 2). Lieutenant Austin corroborated the false statement made by Sergeant Sherrod, even though Austin had not been present when Plaintiff was thrown from the wheelchair. (*Id.*). Plaintiff was found guilty and sanctioned with segregation and demotion to C-grade status. (*Id.*). Plaintiff informed Warden Galloway of the incident and requested review of the surveillance footage. (*Id.*). Warden Galloway refused Plaintiff's request stating that "he would not override his staff." (*Id.*). According to Lieutenant Banks, however, the surveillance footage contradicted Sergeant Sherrod's account of the events. (*Id.*).

## PRELIMINARY DISMISSAL

Plaintiff lists Defendant Lieutenant Melvin as a defendant but does not assert any allegations against Melvin in the body of the Complaint. Thus, the Court is unable to ascertain what claims, if any, Plaintiff has against Melvin, and Melvin is dismissed without prejudice. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff

cannot state a claim against a defendant by including the defendant's name in the caption.").

## DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

**Count 1:** Eighth Amendment excessive force claim against Sherrod.

**Count 2:** Eighth Amendment failure to intervene claim against Ashley and Susan.

**Count 3:** Eighth Amendment deliberate indifference claim against Sherrod, Ashley, and Susan.

**Count 4:** Fourteenth Amendment due process claim against Sherrod and Austin.

**Count 5:** First Amendment retaliation claim against Austin.

**Count 6:** Eighth Amendment failure to intervene claim against Austin and Galloway.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

## Count 1

Plaintiff asserts Sergeant Sherrod threw him from the wheelchair and that at the time he did not pose any threat or resistance. This allegation is sufficient for Count 1 to

---

[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

proceed against Sergeant Sherrod. *See Wilbron v. Ealy,* 881 F. 3d 998, 1008 (7th Cir. 2018) ("Correctional officers violate the Eighth Amendment when they use force not in a good faith effort to maintain or restore discipline, but maliciously and sadistically for the very purpose of causing harm.") (internal quotations and citations omitted).

### Count 2

Plaintiff claims that Nurses Ashley and Susan witnessed him being thrown to the ground by Lieutenant Sherrod and failed to intervene or provide medical care demonstrating deliberate indifference to a serious medical need. (Doc. 1, p. 3).

A prison staff member "can be liable for another officer's excessive force only if that [staff member] has a realistic opportunity to intervene and stop the first officer's actions. *Miller v. Gonzalez,* 761 F. 3d 822, 826 (7th Cir. 2014). Here, Plaintiff does not assert any facts from which the Court can plausibly infer the Nurses Ashley and Susan had reason to anticipate that Sergeant Sherrod would throw Plaintiff to the ground. Thus, they had "no time to act until after" Sherrod had already used force against Plaintiff, and by then it was too late to intervene. *Id.* Accordingly, Plaintiff has failed to state a claim for failure to intervene, and Count 2 is dismissed.

### Count 3

Plaintiff asserts that after he was thrown from the wheelchair, and he was not provided medical care, even though he had a preexisting ankle injury. (Doc. 1, p. 2, 3).

To state a claim for the denial of medical care in violation of the Eighth Amendment, Plaintiff must plead facts suggesting he suffered from an objectively serious medical need and that each defendant responded with deliberate indifference. *Roe v.*

*Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). An objectively serious medical condition involves chronic or substantial pain or significantly impacts a plaintiff's daily activities. *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997); *Berry v. Peterman,* 604 F.3d 435, 440 (7th Cir. 2010). Deliberate indifference is shown by a defendant who knowingly disregards a serious medical condition or persists in a course of treatment known to be ineffective. *Conley v. Birch*, 796 F.3d 742, 747 (7th Cir. 2015).

Although Plaintiff had a preexisting ankle injury, he does not make any sort of allegation that he was injured or reinjured when he was thrown from the wheelchair. He fails to describe any serious medical need that required attention, and he does not assert that Sherrod, Ashley, and Susan were aware of a serious medical need that resulted from the use of excessive force requiring additional treatment. Accordingly, Plaintiff has failed to state a claim for deliberate indifference, and Count 3 is dismissed.

**Count 4**

Plaintiff asserts that as a result of the false disciplinary report that was issued by Sergeant Sherrod and corroborated by Lieutenant Austin, he was found guilty by the Adjustment Committee of disobeying a direct order and sanctioned with segregation and demotion to C-grade status. To the extent Plaintiff is bringing a Fourteenth Amendment due process claim, such claim is dismissed.

A Fourteenth Amendment due process claim challenging a prison disciplinary proceeding requires a plaintiff to show: (1) a constitutionally protected liberty interest; and (2) deficient procedures in connection with the deprivation of that interest. *Lisle v. Welborn*, 933 F.3d 705, 720 (2019); *Wilkinson v. Austin*, 545 U.S. 209, 220-21 (2005). The

question is "whether a protected liberty interest exists, and if so, whether [Plaintiff] received adequate process to protect it." *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024).

**A. Protected Liberty Interest**

A prisoner's liberty interest is implicated by prison discipline that "imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ealy*, 109 F.4th at 964 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). To show a hardship sufficient to create a protected liberty interest, an inmate must demonstrate that his punishment was a dramatic departure from basic conditions of prison life. *See Sandin*, 515 U.S. at 486; *Lisle*, 933 F.3d at 721 ("If the disciplinary measures do not 'substantially worsen the conditions of confinement' of an inmate, then he has not been deprived of a protected liberty interest.") (quoting *Miller v. Dobier*, 634 F.3d 412, 414–15 (7th Cir. 2011)). When analyzing whether disciplinary segregation implicates a protected liberty interest, courts consider "the 'combined import of the duration of the segregative confinement *and* the conditions endured.'" *Ealy*, 109 F.4th at 965 (quoting *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013)). "[T]he facts matter." *Lisle*, 933 F.3d at 721.

Here, Plaintiff's allegations are simply insufficient to trigger any sort of liberty interest because Plaintiff fails to provide the Court with any information about the amount of time he spent in segregation. Moreover, equally absent from Plaintiff's complaint are any sort of allegations that describe the conditions of his confinement in segregation. Absent this information, Plaintiff's allegations fail to implicate a liberty interest.

**B. Process Afforded**

But even if the Court were to assume Plaintiff was deprived of a liberty interest, Plaintiff has failed to provide enough information to adequately allege a due process violation. The Seventh Circuit recently clarified that inmates facing disciplinary segregation are entitled only to "informal, nonadversarial due process." *Ealy*, 109 F.4th at 965 (quoting *Adams v. Reagle*, 91 F.4th 880, 895 (7th Cir. 2024)). This requires only "some notice" of the reasons for the inmate's placement in segregation, an opportunity to present his views, and a review by the decision maker of the charges and the available evidence. *Ealy*, 109 F.4th at 966 (citing *Adams*, 91 F.4th at 895); *Westefer v. Neal,* 682 F.3d 679, 684, 685 (7th Cir. 2012); *Alston v. DeBruyn*, 13 F.3d 1036, 1042 (7th Cir. 1994).[3]

Plaintiff claims that Lt. Austin corroborated a "false" statement without firsthand knowledge and thus "influenced" the Adjustment Committee's finding of guilt. Plaintiff also claims that the Adjustment Committee did not review surveillance footage or call certain witnesses. As the Court understands it, Plaintiff's allegations indicate that he was given notice of the charge against him and was afforded an opportunity to be heard at the Adjustment Committee Hearing (See Doc. 1, p. 2). Plaintiff's issue, however, appears to be a contention that the Adjustment Committee was not impartial and that it failed to review all available evidence. But Plaintiff does not expound on how he knows or why he believes the Adjustment Committee was "influenced" by Lt. Austin. Moreover, the Adjustment Committee is entitled to credit and discredit evidence it considers at

---

[3]"Due process [also] entitles a prisoner to an impartial decisionmaker during a prison disciplinary hearing." *Adams*, 91 F. 4th at 895.

hearings. And based on Plaintiff's allegations, it appears that is what happened here in that the Adjustment Committee simply credited a statement as well as Lt. Austin's corroboration of that statement.[4] Although Plaintiff claims the statement is "false", Plaintiff's allegations are insufficient to raise any inference that Lt. Austin affected the impartiality of the Adjustment Committee.

As to Plaintiff's allegation that the Adjustment Committee failed to call nurses as witnesses, this is a non-starter. Plaintiff does not indicate whether or not he requested the nurses as witnesses, but even so, all that informal due process requires on this point is that an inmate must be afforded an opportunity to his views at the disciplinary hearing. *See Ealy*, 109 F. 4th at 967. There is no suggestion that Plaintiff was unable to do this.

Finally, Plaintiff claims the Adjustment Committee failed to review surveillance footage of the incident. From the outset, Plaintiff does not sufficiently explain how he knows or why he believes that surveillance footage of the incident actually exists. Plaintiff makes a passing reference that Lt. Banks, with Internal Affairs, "reportedly reviewed the camera footage" and claims that it contradicts the staff's account. But Plaintiff's use of the term "reportedly" is conspicuous as that seems to indicate that Plaintiff does not have personal knowledge of this information. Plaintiff fails to allege or explain how he knows that Lt. Banks reviewed the supposed footage. Moreover, there is also no allegation or information about whether Lt. Banks made a report regarding his review of the camera footage and whether or not the Adjustment Committee relied on Lt. Banks report or

---

[4] Plaintiff does not provide any details on whose statement Lt. Austin corroborated. It is possible that Plaintiff is referring to a statement in the disciplinary charge or disciplinary report, but he never connects the dots or provides any additional details on the statement.

review of the supposed camera footage in its decision making process. Simply put, Plaintiff's allegations are too thin and too conclusory for the Court to conclude or plausibly infer a due process violation.

Accordingly, Plaintiff's complaint fails to implicate a liberty interest and even if he did, he has failed to plausibly allege a violation of the process he was afforded. Count 4 is dismissed.

**Count 5**

Plaintiff asserts that he was engaged in protected speech when he went on a hunger strike and that Lt. Austin's "role in supporting or fabricating disciplinary charges in response constitutes retaliation." (Doc. 1, p. 3).

A prison official who takes action in retaliation for a prisoner's exercise of a constitutional right violates the Constitution. *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000). The Seventh Circuit has articulated that for a plaintiff to prevail on a First Amendment retaliation claim, he must show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert, 557* F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)) (other citations omitted).

Plaintiff's assertion that Austin retaliated against him for engaging in a hunger strike by corroborating the false disciplinary report is conclusory and not supported by the facts in the Complaint. There are no facts indicating that Austin was even aware that

Plaintiff engaged in a hunger strike. And in fact, it appears that Plaintiff began his hunger strike *after* Austin provided corroboration for the disciplinary ticket. *See Manuel v. Nalley,* 966 F. 3d 678, 680 (7th Cir. 2020) ("The motivating factor amounts to a causal link between the activity and the unlawful retaliation."). Accordingly, Count 5 is dismissed.

## Count 6

Plaintiff asserts that Lt. Austin "had the authority and duty to prevent subordinate misconduct but took no action," and that Warden Galloway knew the risks to Plaintiff and "failed to intervene to redress misconduct." (Doc. 1, p. 3).

To succeed on a claim for failure to intervene, a plaintiff must demonstrate that the defendant "(1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it." *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017). However, a failure to intervene claim "depend[s] on proof of an underlying constitutional violation." *Coleman v. City of Peoria*, 925 F.3d 336, 351 (7th Cir. 2019).

The only constitutional claim Plaintiff has successfully pled is an Eighth Amendment excessive force claim against Sergeant Sherrod. According to the Complaint, Austin and Galloway were informed about the excessive force incident after it occurred. There are no facts to support the conclusion that Austin and Galloway knew Sherrod was going to use force that day and had a realistic opportunity to step in and prevent the use of force by Sherrod against Plaintiff. *See Stewardson v. Titus,* 126 F. 4th 1264, 1279 (7th Cir. 2025) ("The law does not require officers to act as fortune tellers, anticipating when their fellow officers might use excessive force in the future…"). Additionally, contrary to Plaintiff's assertions, "public officials who know or should know about a wrong have no

duty to correct the wrong and are responsible for their own misdeeds, but not for anyone else's." *Turley v. Hulce,* No. 11-1052-MJR, 2013 WL 12204183, at *2 (S.D. Ill. 2013) (citing *Burks v. Raemisch,* 555 F.3d 592 (7th Cir. 2009)). Austin and Galloway cannot be held liable solely based on the fact they hold supervisory positions. A supervisor must be "personally involved in the constitutional violation" to held liable. *See Gill,* 850 F. 3d at 344. Other than failing to respond the way Plaintiff would have liked following the use of force by Sherrod, he has not presented any facts from which the Court can conclude that Austin and Galloway violated his constitutional rights. Count 6 is dismissed.

## MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a motion asking the Court to recruit counsel to represent him in this case. (Doc. 2). Pursuant to 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." When faced with a motion for recruitment of counsel the Court applies a two-part test: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote,* 503 F.3d 647, 654 (7th Cir. 2007).

Plaintiff has not met either requirement for court recruited counsel. He does not provide the Court with any information on efforts he has made to hire a lawyer himself; nor does he state why he believes he is incapable of representing himself. Accordingly, the motion is **DENIED**. (Doc. 2).

Even setting these deficiencies in Plaintiff's motion for counsel aside, the Court believes Plaintiff is capable of proceeding pro se, at least for now. This case is in the very

early stages. Defendant Sherrod has not been served, and extensive argument and legal research are not required. *See Kadamovas v. Steven*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel... cannot be gauged."). Additionally, Plaintiff has some high school education, and his pleadings demonstrate an ability to construct coherent sentences and relay information to the Court. Plaintiff therefore, appears competent to litigate this matter without representation at this juncture. Once discovery has commenced, if Plaintiff has significant difficulty, he may refile his motion. Should Plaintiff choose to move for recruitment of counsel at a later date, the Court directs Plaintiff to: (1) contact at least three attorneys regarding representation in this case prior to filing another motion; (2) include in the motion the names and addresses of at least three attorneys he has contacted; and (3) if available, attach the letters from the attorneys who declined representation or copies of his payment voucher for postage.

## DISPOSITION

**IT IS HEREBY ORDERED** that the Complaint survives preliminary review pursuant to 28 U.S.C. § 1915A. **COUNT 1** shall proceed against Christopher Sherrod. **COUNTS 2-6** are **DISMISSED without prejudice**. Because there are no surviving claims against Austin, Ashley, Susan, Melvin, and Galloway, the Clerk of Court is **DIRECTED** to terminate them as defendants on the docket.

The Clerk of Court shall prepare for **Christopher Sherrod**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and

this Memorandum and Order to the defendant's place of employment as identified by Plaintiff. If the defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, her last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Because this suit includes allegations of physical injuries, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The defendant is **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, the defendant only needs to respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and (if applicable) his or her attorney were

deemed to have entered into a stipulation that any unpaid costs taxed against the applicant shall be paid from any recovery secured in this action.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 14, 2026**

/s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

**Notice to Plaintiff**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.